UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| GREG RULEY, ) | |
| ) | Civil No. 11-36-ART |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| CORRECTIONS CORPORATION ) | |
| OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Greg Ruley sued the Corrections Corporation of America and several of its employees and alleged that they violated his civil rights during his incarceration at Otter Creek Correctional Center. R. 19. The defendants filed for summary judgment. R. 96. For the reasons given below, their motion is granted in part, denied in part, and supplemental briefing is ordered.

## BACKGROUND

When Greg Ruley arrived at the Otter Creek Correctional Center (OCCC) he had a gastric ulcer, back pain (apparently due to a herniated disc), and neuropathy, which caused numbness and pain in his right side.[1]  R. 19 at 4; R. 94 at 4, 12; R. 98-1 at 3, 8–13. Ruley claims that the defendants ignored or inadequately treated his ailments, which caused him permanent harm. R. 19 at 2–8.

---

[1] The Sixth Circuit has noted that "[n]europathy is nerve damage." *McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 279 n.2 (6th Cir. 2007).  Neuropathy may cause "difficulty walking, bending, and balancing." *Curtis v. Humana Military Healthcare Servs., Inc.*, 448 F. App'x 578 (6th Cir. 2011).

After arriving at OCCC, Ruley was dismayed to find that his physician, Dr. Steven Conrotto, would not prescribe Neurontin, a drug used to relieve neuropathic pain. R. 98-1 at 3. Ruley believes that this drug would have effectively treated both his back pain and his neuropathic ailments. R. 19 at 4. According to Ruley, the medications that Dr. Conrotto did prescribe were not only less effective than Neurontin but also made his stomach ulcer worse. R. 19 at 7; R. 98-1 at 3, 7; R. 98-6 at 8. One morning, approximately nine months after arriving at OCCC, Ruley began vomiting "bright red blood with black flecks" as a result of the inadequate medication. R. 16 at 6. Officer Michael Ryan observed Ruley's condition and radioed the medical staff at around 6:30 a.m. Nurses Rose Little and Christie Thornsberry were on call, but allegedly told Ruley that he would have to wait forty-five minutes before coming to OCCC's medical wing. R. 98-5 at 2. But when a different officer called the medical wing around 8:00 a.m., the staff had no record of Ruley's illness. R. 98-4 at 4–5. Medical personnel examined Ruley shortly thereafter. At this time, neither Little nor Thornsberry were on duty. *Id.*

Two days later, Dr. Conrotto examined Ruley and scheduled him for a gastrointestinal consult at a hospital in Hazard, Kentucky. R. 94-2 at 25, 31. Ruley believes he was supposed to have a gastroenterological procedure during this appointment to address his bleeding ulcers. R. 19 at 6; R. 93-1 at 65. But once Ruley arrived at the hospital, Nurse Day "with the knowledge and authority of all defendants," allegedly ordered Ruley's guards to bring him back to OCCC and deny Ruley the treatment he needed. R. 19 at 6; R. 98-5 at 3. So instead of performing surgery, the doctor evaluated Ruley's condition and recommended an abdominal ultrasound and a colonoscopy. R. 93-1 at 65–66; R. 98-8 at 1.

Dr. Conrotto scheduled the abdominal ultrasound for the following week. R. 98-8 at 1. The night before the ultrasound, OCCC staff brought Ruley to medical observation to ensure that he did not eat anything before his procedure. R. 93-1 at 71. Ruley told medical personnel that he did not want to stay in medical observation overnight and could follow their directions from his cell. R. 98 at 5. When OCCC staff told him that he could only receive the ultrasound if he stayed in medical observation, Ruley refused the procedure. R. 94-2 at 62, 65. Ruley was transferred to Eastern Kentucky Correctional Complex five days later. R. 95 at 25. But, he believes that his transfer paperwork falsely minimized the seriousness of his condition. R. 98 at 6–7.

Ruley also makes several general allegations about his medical care at OCCC. First, Ruley believes OCCC was "grossly understaffed," and that medical personnel were not properly trained to respond to emergencies. R. 19 at 3, 5, 7; R. 98 at 11–12. Second, Ruley alleges that the defendants' hiring and training decisions were part of a "brutal conspiracy[] to save money and their jobs." R. 19 at 5. Third, Ruley believes that CCA's policy requiring it to authorize any outpatient treatment caused him to receive constitutionally inadequate care. R. 19 at 7. Finally, Ruley alleges that the individual defendants denied him adequate medical care because they did not approve of his religious beliefs.

As a result of OCCC's medical care, Ruley alleges that he suffered permanent damage to his stomach, back, neck, and right side. R. 19 at 7. He filed a pro se suit against CCA, Dr. Conrotto, and Nurses Day, Little, and Thornsberry under 42 U.S.C. § 1983 and 42

U.S.C. § 1985(3), claiming that their various failures to provide medical care violated his constitutional rights.[2] The defendants have now filed for summary judgment.

## ANALYSIS

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the moving party, the defendants must either: (1) present undisputed evidence that forecloses the possibility of Ruley succeeding on a claim; or (2) identify an essential element of a claim that Ruley cannot support with proper evidence. *See id.* at 323−24. If they do so, Ruley must respond with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court then decides whether a reasonable juror could find for Ruley on each of his claims when all reasonable inferences from the evidence are drawn in his favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

**I.      Failure to Prescribe Neurontin**

Ruley argues that Dr. Conrotto and Nurse Day violated his Eighth Amendment right to adequate medical treatment when they did not give him Neurontin, a drug used to treat nerve pain. R. 19 at 4. He alleges that the medications that Dr. Conrotto did prescribe were ineffective in combating Ruley's back problems and neuropathic pain and that the doctor should have prescribed Neurontin for both conditions. *Id.*

If Dr. Conrotto and Nurse Day were deliberately indifferent to Ruley's serious medical needs, then they violated his Eighth Amendment rights. *See Estelle v. Gamble*, 429

---

[2] The Court previously dismissed Ruley's claims against Dr. Doug Crall, the Medical Director for the Kentucky Department of Corrections. R. 72.

4

U.S. 97, 104–05 (1976). Deliberate indifference requires more than negligence. Dr. Conrotto and Nurse Day must have "recklessly disregard[ed]" a "substantial risk of serious harm" to Ruley. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Deliberate indifference therefore has an objective component and a subjective component. First, Ruley must show "that the medical need at issue [wa]s sufficiently serious." *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001) (quotation omitted). Second, Ruley must show that Dr. Conrotto and Nurse Day were actually aware of his serious medical needs and that they chose to disregard that risk. *Id.* at 703.

Ruley complained about severe and debilitating pain during his time at OCCC. *See, e.g.*, R. 94 at 14, 20, 44, 49, 60 (Ruley's complaints to staff members); *see also* R. 94 at 43 (diagnosis of chronic lumbar pain). Severe and debilitating pain is a serious medical need, meaning Ruley has satisfied the objective component of the deliberate indifference test. *See Murphy v. Grenier*, 406 F. App'x 972, 975 (6th Cir. 2011) (holding that "extreme pain due to [a] back condition" was a serious medical need); *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997) (finding "substantial back pain" a serious medical need).

There is no evidence that Dr. Conrotto and Nurse Day disregarded Ruley's severe pain, so Ruley cannot establish the subjective component of his deliberate indifference claim. Ruley fails to present any facts indicating that the defendants disregarded his medical risks. The defendants point out that Ruley was treated for his "pain condition." R. 96-1 at 20. When Ruley first complained of back pain, medical personnel noted that he was ambulating normally and that he rated his pain only five out of ten. R. 94 at 21. When Ruley's pain grew worse, Dr. Conrotto prescribed him a number of pain medications. R. 94 at 42–43 (Dr. Conrotto's notes from July 9, 2010); R. 94 at 44 (Ruley's complaint and a note from medical

5

staff regarding Dr. Conrotto's July 9, 2010 follow-up appointment).  When it became clear that those medications had not adequately addressed Ruley's pain, Dr. Conrotto altered Ruley's treatment to include a pain-reducing injection of SoluMedrol.  R. 94-1 at 2–3.  Dr. Conrotto also prescribed two specific medications—Naprosyn and Flexeril—at Ruley's request.  R. 98-1 at 17.

Despite this treatment, Ruley claims that Dr. Conrotto and Nurse Day were deliberately indifferent to his pain because they did not prescribe Neurontin when asked for it.  A doctor's failure to prescribe specific medications does not demonstrate deliberate indifference to an inmate's needs.  *Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008).  And where a prisoner received medical attention for his serious needs, courts are "generally reluctant" to wade into disputes over the adequacy of that medical attention.  *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Dr. Conrotto specifically considered prescribing Neurontin for Ruley's back pain.  But Dr. Conrotto decided not to prescribe Neurontin to Ruley because (1) Neurontin was frequently abused by inmates (like Ruley) who had a prior history with illegal drugs, and (2) such a prescription was not "medically required."  R. 96-7 at 3 ¶ 5.  Dr. Conrotto's actions do not demonstrate deliberate indifference; instead they demonstrate a deliberate choice based on the facts of Ruley's case.  Nurse Day simply followed Dr. Conrotto's directives, so she was not deliberately indifferent either.  *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) ("Nurses may generally defer to instructions given by physicians, but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." (quotation omitted)).

In short, Ruley received treatment for his severe back pain, and that treatment was not "so cursory as to amount to no treatment at all." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002). Thus, neither Dr. Conrotto nor Nurse Day was deliberately indifferent to Ruley's pain.

## II.   Neuropathy

Liberally construed, Ruley's complaint also faults Dr. Conrotto and Nurse Day for failing to treat his neuropathy. R. 19 at 4, 9; R. 93-1 at 53; R. 98 at 9; *see also Wagenknecht v. United States*, 533 F.3d 412, 415 (6th Cir. 2008) (requiring courts to liberally construe pro se filings). This claim is different than Ruley's Neurontin-specific claim. There, Ruley argued that the defendants were deliberately indifferent because they did not prescribe him Neurontin for his pain. A liberal construction of Ruley's complaint reveals a distinct claim: Ruley believes that the defendants knew that he suffered from neuropathy and did not treat that condition at all. Ruley argues that the defendants' failure to provide appropriate medication violated the Eighth Amendment. R. 98 at 9.

The defendants did not address this claim, perhaps because they reasonably believed that Ruley's claim about his neuropathy was the same as, or also addressed by their responses to, his claim about Neurontin. If Ruley's neuropathic complaints only concerned his pain, then the defendants might be right. But it appears that Ruley's neuropathy caused both pain and numbness. And Ruley claims that he was unable to walk as a result of his untreated neuropathy. *See* R. 19 at 7 (noting a loss of balance due to inadequate treatment); R. 98 at 4, 7 (noting muscle atrophy and that Ruley's neuropathy caused his leg to "give out"). Because the Court is construing Ruley's claims more broadly—as it must—the

7

defendants may have time to respond to this issue which was not obvious from the face of his complaint.

Ruley's neuropathy qualifies as a serious medical need for two reasons. First, Ruley submitted evidence that his neuropathic pain was severe. R. 98-3 at 12; *see also* R. 93-1 at 76 (deposition testimony that Ruley "made [medical staff] aware [] over and over" that his neuropathy caused severe pain). Second, Ruley's medical records show that he was treated for neuropathy in 2008. R. 98-2 at 20. A diagnosed condition requiring treatment generally qualifies as a serious medical need. *See Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *see also Williams v. Guzman*, 346 F. App'x 102, 105 (7th Cir. 2009) (holding that a plaintiff with diagnosed neuropathy met his burden to show a serious medical need).

But there is a genuine issue of material fact as to whether the defendants were deliberately indifferent to Ruley's neuropathy. Ruley's OCCC medical records reflect a diagnosis of neuropathy in Ruley's right leg dating back to 2007. *See, e.g.*, R. 94 at 12–13. While at OCCC, Ruley complained a number of times about pain and numbness in his right leg. R. 93-1 at 58; R. 98-3 at 3–4, 12 (complaining of "right leg numbness and muscle pain"); R. 94 at 20. As explained above, the defendants did not address this claim. That means the Court does not know what, if anything, Dr. Conrotto and Nurse Day did to treat Ruley's neuropathy. The Court is not required to comb the record for evidence supporting summary judgment. Fed. R. Civ. Pro. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Thus, summary judgment must be denied on Ruley's claim that Dr. Conrotto and Nurse Day were deliberately indifferent to his neuropathy.

However, since this claim is the result of the Court liberally construing Ruley's complaint, the Court will allow the defendants to submit additional briefing on this claim. They may submit that briefing by following the instructions at the end of this Opinion.

### III.  Gastric Ulcer

Ruley also claims that the defendants were deliberately indifferent to his gastric ulcer. A bleeding ulcer may qualify as a serious medical need. *Westlake v. Lucas*, 537 F.2d 857, 860–61 (6th Cir. 1976) (claim stated for failure to treat bleeding ulcer). Ruley claims that the defendants were deliberately indifferent to his gastric ulcer for four reasons. First, the medications prescribed by Dr. Conrotto and Nurse Day irritated his gastric ulcer and caused him to vomit blood. R. 19 at 4; R. 98-1 at 7; R. 98-6 at 8–9. Second, Nurse Little and Nurse Thornsberry were deliberately indifferent in treating this symptom. R. 19 at 6. Third, Nurse Day unconstitutionally delayed his gastroenterological procedure. R. 19 at 6. And finally, the defendants required him to stay in medical observation the night before he was scheduled for a colonoscopy and an abdominal ultrasound. R. 19 at 6; R. 98-8 at 1. None of these alleged wrongs satisfy the second half of a deliberate indifference claim.

*Medication Claim*: Ruley has offered no evidence that any defendant knew that the pain medication would aggravate his ulcers. This deficiency is fatal to Ruley's claim. To show deliberate indifference, the plaintiff must show that the defendants were actually aware of a substantial medical risk to the plaintiff and that the defendants disregarded that risk. *See Comstock v. McCrary*, 273 F.3d at 702–03 (quotation omitted). Of course, Dr. Conrotto's decision to prescribe certain pain medications to an inmate with ulcers might have been negligent. But deliberate indifference requires more than negligence. *See id.* And when Ruley began vomiting blood, the medical staff changed his medications, R. 94-2 at 16–18,

gave him extra medicine for his stomach problems, R. 94-2 at 24, and scheduled a consultation with a gastroenterologist. R. 94-2 at 25, 31. Ruley has presented no evidence that this was an unreasonable response to his problems. *See Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." (quoting *Farmer*, 511 U.S. at 844)).

*Nurse Little and Nurse Thornsberry*: Ruley faults Nurse Little and Nurse Thornsberry for a forty-five minute delay in treatment for his bleeding ulcer. R. 19 at 6; R. 98-4 at 6; R. 98-5 at 2. But Ruley has no evidence that the delay posed an excessive risk to his health. *See Scott v. Ambani*, 577 F.3d 642, 650 (6th Cir. 2009) (deliberate indifference requires a knowing disregard of an "*excessive* risk to inmate health or safety" (internal quotation omitted)). And inmates who believe that a delay in their medical treatment violated the Eighth Amendment must demonstrate that they were harmed by the delay. *See Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 778 (6th Cir. 2012) (quoting *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). Ruley has no such evidence, so his claim against Nurses Little and Thornsberry cannot survive summary judgment.

*G.I. Scope Surgery*: Ruley also claims that Nurse Day delayed treatment for his bleeding ulcer when she cancelled a gastroenterological procedure scheduled to take place at an outside hospital. R. 19 at 6. In support of his claim, Ruley submitted an affidavit from correctional officers Hobie Little and Eric Richie stating that they were directed to take Ruley to see a doctor, that at the hospital a nurse directed Ruley to prepare for surgery, and that Nurse Day told the hospital not to perform surgery but to meet with the doctor's assistant instead. R. 98-5 at 3. Nurse Day responded that OCCC sent Ruley to an outside physician

10

for a gastroenterological consult, but that Ruley was not scheduled to have surgery at this appointment. R. 94 at 2.

Even assuming Ruley was scheduled to have a procedure during this appointment, his Eighth Amendment claim against Nurse Day would still fail. At the gastroenterologist's recommendation, Ruley was scheduled for an abdominal ultrasound and a colonoscopy eight days after his appointment. R. 98-8 at 1 (Noting an initial appointment on March 22, 2011 and an ultrasound and colonoscopy scheduled for April 1, 2011). There is no evidence that Ruley suffered additional harm attributable to this eight-day delay in his gastroenterological surgery. R. 96-1 at 8. As noted above, plaintiffs seeking to use brief delays in treatment as the basis for an Eighth Amendment claim must submit medical evidence establishing that they were harmed by the delay. *See Bruederle*, 687 F.3d at 779. So even if Nurse Day did delay Ruley's treatment, without more this delay cannot be the basis for a deliberate indifference claim.

*Medical Observation*: The follow-up abdominal ultrasound and colonoscopy never took place. Medical staff cancelled Ruley's appointment because he refused to stay under medical observation the night before the procedure. R. 94-2 at 65. Ruley argues that medical observation was unnecessary, so canceling his appointment indicated deliberate indifference to his medical needs. R. 98 at 5; R. 98-7. In support of summary judgment, Dr. Conrotto submitted an affidavit that the pre-procedure protocol for colonoscopies requires medical observation. R. 96-7 at 4; *Celotex Corp.*, 477 U.S. at 323 (explaining that the party moving for summary judgment must demonstrate the absence of triable facts). And there is no genuine dispute as to this fact. Ruley responded with several pages of instructions for his colonoscopy. R. 98 at 5; R. 98-7. These instructions state that Ruley could not eat or drink

11

the night before the procedure. R. 98 at 5; R. 98-7. They do not say that he could do so from his cell. *See* R. 98-7 at 1–3. So it appears that OCCC employees were simply following protocol when they cancelled Ruley's appointment. And the medical observation protocol existed for good reason–to prevent inmates from eating the food stored in their cells. R. 96-1 at 13. So the defendants' decision to cancel Ruley's procedure does not demonstrate the sort of "reckless disregard" of a "substantial risk of serious harm to a prisoner" necessary to state an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

### IV. Other Treatment-Related Claims

In his response to the defendants' motion for summary judgment, Ruley also alleges that the defendants did not treat his hyperthyroidism and minimized his condition on his transfer paperwork. R. 98 at 7–8. Even if these allegations were true—and there is plenty of reason to believe that they are not, R. 98-10 at 1 (Ruley's transfer paperwork)—neither fact could serve as a basis for an Eighth Amendment claim. Ruley only speculates that these errors *could* have harmed him. R. 98 at 7–8. Ruley provides no evidence of actual harm, so his claim cannot survive summary judgment. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### V. Religious Discrimination

Ruley generally alleges that the defendants were deliberately indifferent to his care because he identifies as a Satanist. R. 19 at 5–6; R. 98 at 17. The defendants' motion for summary judgment does not discuss this allegation. In their reply brief, the defendants argue that Ruley has no evidence that they made any medical decision because of his Satanism. R. 101 at 5. But a reply brief is the wrong time to make a new argument for summary judgment. *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 674 (E.D.Ky. 2009) ("[I]ssues

12

may not be raised in district court for the first time in a reply brief." (citation omitted)). So, to the extent that Ruley was actually injured by the defendants' actions, his section 1983 claim and related section 1985 conspiracy claim survive summary judgment. However, if further briefing on the Neuropathy issue reveals that Ruley did not receive poor care, this claim will fail. The defendants cannot have violated Ruley's Eighth Amendment rights because of his Satanism if they did not violate his Eighth Amendment rights at all.

### VI. Corrections Corporation of America.

Ruley sued CCA in addition to the individual defendants. To hold CCA liable, Ruley must show that a "policy or custom" caused the alleged violations of Ruley's Eighth Amendment rights. *See Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011) (citing *Monell v. City of New York Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Ruley points to three policies, but none supports a claim against CCA.

First, he alleges that CCA required the OCCC medical staff to obtain authorization from both CCA and the Kentucky Department of Corrections before providing inmates with emergency medical treatment. R. 19 at 7. Ruley's remaining claims allege that Dr. Conrotto and Nurse Day did not treat his neuropathy and that they did so because of his religious beliefs. These claims have nothing to do with emergency medical treatment. R. 96-7. So this policy (assuming it exists) cannot have caused the alleged violations of Ruley's Eighth Amendment rights, and so cannot support a claim against CCA.

Second, Ruley believes that CCA failed to hire and train sufficient staff to manage the needs of OCCC's inmate population. R. 19 at 7; R. 98 at 11. This policy (again, assuming it exists) is also unrelated to Ruley's remaining neuropathy and religious discrimination claims. So Ruley's hiring and training allegations cannot support a claim against CCA.

Third, he contends that it was OCCC policy not to dispense Neurontin, and instead to prescribe less effective medication for inmates' pain. R. 98 at 9. As explained above, Dr. Conrotto and Nurse Day's decision not to prescribe Neurontin did not violate Ruley's Eight Amendment rights. So CCA's policy against prescribing Neurontin cannot support a deliberate indifference claim because the other prescribed medications were appropriate to treat his pain. *See Mabry*, 289 F. App'x at 902. Even if Dr. Conrotto and Nurse Day failed to treat Ruley's neuropathy, Ruley's medication-specific claim against CCA would still fail.

### VII. Discovery Dispute

Ruley's response notes that he is still seeking discovery of "certain documents pertaining to the [correctional officers'] daily log book." R. 98 at 2. Ruley requested this information from the defendants after the conclusion of discovery. R. 43; R. 98 at 19. And even if the Court were to ignore this fact, it is not clear how further discovery would support Ruley's claims. Ruley's response does not make clear what facts he seeks or how he believes the log book will be helpful. So the Court cannot say that additional discovery is necessary.

## CONCLUSION

It is therefore **ORDERED** that:

(1) The defendants' motion for summary judgment, R. 96, is **DENIED** with respect to:

    (a) Ruley's section 1983 claim against Dr. Conrotto and Nurse Day for deliberate indifference to his neuropathy; and

    (b) Ruley's section 1983 and section 1985 claims that his poor treatment was the result of religious discrimination.

(2) The defendants may file supplemental briefing as to Ruley's section 1983 claims against Dr. Conrotto and Nurse Day for deliberate indifference to Ruley's neuropathy no later than **May 10, 2013**. Ruley may file any response no later than **May 24, 2013**. The Defendants must file any reply no later than **May 31, 2013**.

(3) The defendant's motion for summary judgment, R. 96, is **GRANTED** with respect to all other claims.

This the 29th day of April, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge